May it please the Court, Tim McCaffrey on behalf of Appellant Juan Perez. May I reserve two or three minutes for rebuttal, Your Honors? Sure. Thank you. I think this case represents a unique opportunity for the Court to use this procedural history to create a few good rules for us who litigate below on when it's right to remove a case and how you should do it. In this particular situation, we have a complaint that plainly alleges the same causes of action. It gets removed. The defendant makes certain arguments. Those arguments are rejected. In between, well actually in between, we filed the first amendment complaint that has the same exact causes of action. You expanded the scope of the lawsuit? By two years. That's a pretty significant change, right? I don't agree that it was significant enough to meet the mountain controversy. Well, you changed the scope, though. More was at stake. Of course. More is at stake by virtue of the fact that two years are added. But at the same time, the same argument is there about this 100 percent violation because of the route restriction. That was put in the original complaint. It was also put in the first amendment complaint. So why should the defendant have another bite at that apple and make an argument that they didn't make the first time the second time? Because you amended the complaint. Yeah, that's not quite correct. Okay. Our view is that if they have a chance to do it, they should do it right the first time. I think that's what Seidman says. I think you can't just keep hijacking a case because you want to try again with a different removal or a different argument to support removal. Well, you argued to the district court that they couldn't rely on the amended complaint in district court. Well, that's not exactly true, because in our reply, we opened up by saying that neither the original complaint nor the first amendment complaint supports or, you know, allows the mountain controversy requirement to be met. We did challenge the defendant's, you know, attempt to use the first amendment complaint and chided them for not setting authority for the proposition that they could use it. But we went on to analyze the fact that the first amendment complaint did not allow for them to... Well, the basic rule on removal, you know, as I recall from my days in the district court, was that you look at the jurisdictional issues at the time the complaint is removed. And so you're looking at the first complaint that was removed. That's right. And certainly if a plaintiff was to make adjustments or try to avoid jurisdiction, those amendments should not be considered. But there are cases that just the opposite, if it's going to invest the court with jurisdiction, they ought to be considered. Because the whole point of a removal is to get it up. If it's in federal court, then it should be there and it should be there properly. Why wouldn't you consider the allegations? But can you have it both ways? You were before the district court on the original complaint. You took the position that the court should not look at the allegations in the first amendment complaint, because you're saying that, look, the amount in controversy following removal is irrelevant, but yet there's a first amendment complaint filed there. So district court accepted your argument. It went back. So if we accept that the first amendment complaint has new allegations that would increase the amount in controversy, why shouldn't the defendant get to come back again on the first amendment complaint? Because they didn't get a chance the first time around. You won on that argument. See, I just respectfully disagree that we won that argument. I think the court did say that in its order. But if you look at our reply brief at ER Volume 4, 474, 475, 476, we addressed the first amendment complaint. We recognize that it's there in its full glory. And they're arguing that the same issues are presented by it. And the court had its chance to do it. I firmly believe that the idea that we're going to send the litigants back to state court and then we're going to come back again months later, I mean, that's just delaying the prosecution of the case. It's delaying the litigation. It might be more efficient to do it the way you suggest. But the way our case law has evolved, as long as there was a significant change, then I think it looks like the removal here, the second removal was not a successively repetitive kind of thing. It was a proper removal. I submit to the court to consider whether the case law truly addresses this particular procedural fact pattern. I think it's a unique situation because it is more efficient to do what I'm advocating now. I firmly believe that. I think we all would agree with that. Why should we go back to state court only to come back again and fight about the same things? It's sitting right there. Well, would it be different if you were ‑‑ if you hadn't filed the First Amendment complaint in federal court, let's say you have the original complaint, you prevail, it got remanded, and then you file the First Amendment complaint. You're saying even under that circumstance, defendants shouldn't get to try for a second time to remove to federal court? No, I think they can in that circumstance try to remove again because now I've filed in state court. But all I would say in response to defendants' second removal in that situation is you're stuck with the arguments you made the first time. So if you're not going to claim 100% violation to get to your mountain controversy the first time around, which we pled, you don't get to do it the second time. Why do you get to keep making different arguments just because the math the first time around didn't work out for you? They have a responsibility to do it properly the first time they do it. That's what Seidman says. So if they wanted to argue 100% violation, they should have done it the first time. They didn't. So they shouldn't be allowed to do it the second time. I just think that makes sense too from an efficiency standpoint because you're just allowing them to do it again and again and again. So let's assume they're now in federal court. Let's just assume for a moment, continuing on with the argument, that the second removal was okay, that it was not an impermissible successive. Why don't they meet the, what are we talking about, $75,000 jurisdictional limit because we're dealing here with diversity? We're dealing with a single plaintiff wage and hour case. I have no idea what the exact number is, but the amount of single plaintiff wage and hour cases filed in Los Angeles County Superior Court has to be astronomically high, in the thousands. If we're going to say that this single plaintiff wage and hour case meets the $75,000 jurisdictional amount, we're going to have a flood of cases coming through the federal court based on diversity. I just can't imagine. I mean, we went through the math. What's your route restriction theory? The route restriction theory applies to meals because that's what the route restriction policy said. It applies to meal breaks. They can't leave the truck and they can't leave the route within a one-mile radius. So the route restriction theory is that they're on duty during that meal period. And rest breaks too, right? So meal and rest breaks? See, that's, I mean, it's a sloppily pled First Amendment complaint. If you read paragraph 16 of the First Amendment complaint, the route restriction theory in the underline says it's all about meal, all about meal, all about meal for the first four sentences, and the very last sentence concludes, therefore, or accordingly, plaintiff pleads that they were not, you know, he would not get his meal and or rest breaks. It's just a poorly drafted complaint because the route restriction was always about the meals. It's about the meals in the original. It's about the meals in the First Amendment. It's always about the meals. So you shouldn't count our point on the mountain controversy is the rest period should not count. 100% violation does not hold true with the route restriction. That's only for the meal periods. And we've said it in the briefs, and we've tried to explain it. But I agree that the complaint, paragraph 16, I get it. It is what it is. It is what it is. But, I mean, I think the court is allowed to interpret it and say, yeah, I can see what they're really talking about here, and it's not rest periods. It's meal periods. So the extent that, you know, the plaintiff put in and or and stuck rest, does that really support 100% violation? Doesn't that theory also extend to rest breaks when drivers have to basically remain on the routes at all times? They're not allowed to leave. Well, point one, the policy itself is just for the meals. Point two, so it's not about rest breaks. Point two is that rest breaks, unlike meal breaks, you're allowed to keep the employee on property. So to the extent you're saying, you know, you have to stay with your truck, that's your moving property, that's not going to be a rest break violation per se. So that's the response. And we cited the regs for that. But, you know, to us, the idea that, you know, you would do 100% violation on that doesn't make sense. And I think it also gets to this, you know, the point of what level of proof does the defendant really have to have when it makes its removal. I mean, they have access to records that could show when and if Mr. Perez didn't get his rest break, based on his time records and based on the they have a whole GPS system in his truck. If they wanted to sit down and figure out how many rest breaks he might not have gotten under our theory, they certainly could do it. It wouldn't be 100%. So our other point is the idea that, hey, you know, on removal, you should have summary judgment type evidence to support your position. And if you don't, and instead you have, you know, conflicting information. This is their policy. Oh, no. The policy is with our case. The policy, though, is about meals, not about rest breaks. So that's why I'm urging the court to look through my poorly drafted First Amendment complaint, the one sentence that says meal under arrest, and say this is really a meal break issue. It's 100% violation. The, you know, again, it gets back to why do they get to argue it a different way the second time around when the same allegations were in the original complaint? Why should all of a sudden it go from assuming three breaks to ten? That doesn't, I don't think that's fair. I don't think that's right. I don't think they should get that second bite at the apple. They have access to the information. They have the allegations in front of them. They should do it right the first time. They shouldn't hijack the case. So we went through the math. We think we get to 52,878 or 98. There's, you know, one of the issues that's come up certainly on the reply papers is the how far back can they go? And this gets to, you know, something that's always completely baffled me in this case. There was a case that was filed before Perez. Mr. De La Cueva, our client, filed the same class action. It got rejected because he had an individual wrongful term case, and the court deemed him to be an unfit rep or not an adequate class rep because there was interest in his wrongful term case. At that case, while that case was pending, the Sakida case was already out there. Altadena took the position through its counsel that they were not related. They had nothing to do with one another. The Akita case was the Swiss carryover case, and they submitted court documents saying they're not related. Perez comes along, which is basically Miguel De La Cueva too, filed the exact same causes of action, same theories, but no wrongful term case. So now we address the adequacy of the class rep. And now they say it's related to Akita, and Judge Real snaps it up, even though before he had rejected De La Cueva. And now they're arguing, even though they had said it's not related, that we get to go back and count to 2006. If anyone should be judicially stopped for making such an argument, it should be Altadena because how can De La Cueva not be related, but Perez be related to Akita? It just doesn't make sense. So that cuts off two years also of their calculation. And I think the couple, not to beat a dead horse, the 203 penalty was in the original complaint. It's in the First Amendment complaint. Why should they get to ignore the 203 penalty? It was the first time they removed the case, but now argue for it in the First Amendment complaint. I just don't see why you get to keep trying until you get it right. I don't think that's consistent with the policy behind removal. The other big ticket items, two more. The 226.3 penalty is a civil penalty that's predicated on a citation. They take the maximum on that. There's no allegation of a citation being issued. It shouldn't count at all. It's really, I don't know of any case that's awarded a 226.3 civil penalty to a plaintiff in California or in this circuit. And the last is the attorney's fees. They want to take 25% of the common fund and analyze it as if it were a class action, but it's not because at this point they're removing it as if it were an individual case. So it's the lodestar method. And if you do the lodestar method, the authorities are that you should probate it based on the number of representatives. So it's $400 at the time of removal. Otherwise, attorney's fees would hijack every single case into federal court because we all know that these individual cases, they come with attorney's fees. If I have a $10,000 overtime case, at the end of my trial, my attorney's fees could be 12 times that, 10 times, and certainly get me over the jurisdictional minimum so that this case presents an opportunity for the court to define these different issues so we know how to act below. Thank you. Did you want to say anything else? He had a motion to dismiss. After Judge Reel determined proper removal and met the $75,000, he then turned to the motion to dismiss under 12b-6, and even though it was only a partial attack, we only attacked part of the allegations in the complaint. And then he got out of their case. He kicked everything. As I understand it, the other side recognizes that they were only dealing with a part of the claim. I believe that's right. I read their papers again thoroughly. I think we all agree that the point of their motion to dismiss was to argue CBA preemption, and that only applied as of January 1, 2011, so that you can't dismiss the entire cause of action because there's remedies that exist prior to the CBA exception. And then in addition, the CBA preemption only deals with meals, and it only deals with overtime, and there's allegations within the first and second causes of actions regarding rest and also just straight-time wages. So the CBA preemption couldn't address that. Finally, there was a case that came out after Judge Reel's order, the Perry case and the district court case, that challenges whether or not the CBA preemption really can be adjudicated on a motion to dismiss. Without the benefit of any discovery, without the benefit of getting into whether or not the CBA actually meets the statutory requirements of the California Labor Code, I think it's premature on a motion to dismiss just to accept that at face value. There were a lot of moving parts here, so we did argue also that in its entirety, the motion to dismiss should be reversed. Thank you. Okay, let's hear from the other side. Good afternoon, Your Honors. Steven Sclaver of Sussman Godfrey for the defendant, Altadena Certified Dairy. I do want to start, even though the issue has not been raised, Altadena is the cross-appellant, and both parties do concede on the issue, for which there is a circuit split, that Judge Reel ultimately sua sponte remanded our case was error. I do want to start with it only because parties can't stipulate to jurisdiction, and so we have raised the issue in our brief that the court made a fundamental error by conflating mandatory original diversity jurisdiction with discretionary supplemental jurisdiction, and here, as the case laws we cite, including St. Paul and geographic expeditions, show that that was error, and if the amount of controversy is satisfied and there's no clear error in that regard, regardless of what happens on the motion to dismiss, that the case should stay in federal court. On the issue of the motion to dismiss addressed at the end, I do want to confirm, as stated in our briefs, that we do agree that the motion should not have been granted to the extent it was. We only sought it for meal breaks and overtime, not rest breaks and straight time, and we also agree that it shouldn't be granted for the time period that precedes the enactment of the CBA statute, and, in fact, we go even further. The CBAs that we submitted in evidence through judicial notice that was undisputed in the case helped establish that they weren't enacted even until June 2011, so there wouldn't be a dismissal until June 1, 2011. That's all provided for. If we agree with you on the jurisdictional issue, how should we handle that? Well, the appeal, it is an interlocutory appeal that's appropriate. It's a collateral order to the failure to exercise discretion to the supplemental jurisdiction point, so what would happen is the court would be partial affirmance and partial reversal on that motion to dismiss, so we would affirm the dismissal of the meal break and overtime claims after the CBAs are effective June 1, 2011 and then reverse as to the time that precedes that time frame as well as the rest break and straight time claims. It would be a partial affirmance and partial reversal in that regard. Okay, so getting to the jurisdictional issue. So getting to the jurisdiction point. So, you know, the big issue of dispute here is whether or not the court should start digging into the merits of the case or not, and it is bedrock law that for purposes of jurisdiction you don't determine the merits because the issue is not whether the defendant will or will not prevail at the end of the case. The issue is what's at controversy according to the four corners of the complaint or any evidence. Well, what's different in the First Amendment complaint that shifted the assumption from three missed breaks per week to 100% violation? It's the route restriction theory. That wasn't in the original complaint? None of the details that was provided for in the First Amendment complaint. In fact, if you look in the record, there's a red line of the First Amendment complaint, and if you look at paragraph 16 of that red line, it's in the record at page 111. In fact, just to put this back in context before I get there, the complaint was pending and Altadena filed a motion to dismiss. The grounds for our motion to dismiss was that the original complaint was too vague about the frequency of the meal breaks. Then the plaintiff amended the complaint, as is their right under the federal rules, and mooted our motion to dismiss and has an extensive red line that the court will see starting on paragraph 16 that goes all the way through paragraph 26, so it's pages 111 through 115, where the plaintiff now goes in painstaking detail about why the route restriction theory renders every break on duty, both meal and rest break. It starts in paragraph 16 with the concluding sentence that now the plaintiff wants adjudicated on the merits as being sloppily written, which is not a defense to removal. There is number 17 that talks about the meal and break policies at issues there and how there's a failure to adjust routes and delivery schedules, and it goes on. So that's the new paragraphs 16 through 26. In addition, there is a footnote to paragraph 26. It's footnote 3. You'll also see that in the red line and in the complaint, and that talks about Zeta Records, X-A-T-A. Zeta is the onboard truck computer that the plaintiff alleged he used to swipe in and out for breaks. In this new allegation, the plaintiff states that a review of the Zeta Records, quote, easily demonstrates, end quote, all the meal and rest break violations at issue in the case. And so on removal, we submitted the Zeta Records in electronic format for this particular plaintiff and looked at whether there was a missing punch for a meal, whether there was a missing punch for a second meal on shifts that required possibly a second meal, or whether there was a punch that was late, in other words, not timely with a five-hour requirement. If you look at that apples-to-apples comparison, there was a 94.6 violation rate based on this new allegation, thereby rendering that calculation appropriate. And we provide an alternative instead of 100 percent violation rate, 94.8 percent violation rate. And that, too, gets us over the $75,000 threshold easily just through the first two causes of action. And so this is really not, to steal kind of the plaintiff's rhetoric, a case of a second bite at the apple. It's a new apple. There is a new complaint that expands the scope of the case with a brand-new theory of liability that was not fleshed out in this manner with new allegations involving Zeta that allows us to have a new calculation that is amply supported by the record and does not constitute clear error. There is, in fact, no case that bars the defendant from changing its calculation when the scope of the complaint has changed. That would violate, we believe, the rule of removal in the procedural rules that govern removal in 28 U.S.C. 1446. That allows us 30 days, in fact, to remove a complaint, not the 14 days that the plaintiff is arguing for when the case was pending in federal court, to go and search our records if we so choose. We're actually permitted unlimited time. It's not even capped by 30 days because under the, I think it's called Cuxhausen case in the Ninth Circuit that we cite, Cuxhausen versus BMW Financial Services, if a defendant is required to go outside and complaint and rummage through their own records, the clock doesn't start for the 30-day removal. It's deemed to be indeterminate on its face. But in any event, we did that timely. We did it within 30 days, and there is no error, nevertheless not clear error, on the calculation. This is a case where the plaintiff alleges all the penalties, all the harm that they intend to seek in the case. And all we did was walk through the math and apply the math to each of the harms. And then now on appeal, they want to run away on the merits on each claim, arguing, well, a citation wasn't issued or they have an argument that certain penalties aren't permitted under Section 203, only under Section 204. And then we cite to the complaint where they allege violations of Section 204 of the Labor Code. And then their answer is, we didn't mean to assert a claim for Section 204. But as was said in the prior argument, the complaint is what it is. That is how you determine, under the case law, the amount in controversy, not the amount they'll prevail on. We think we're going to win this case, as most defendants do. But it is what's at controversy, and there is no clear error in that regard to warrant reversal. Are there any other questions on any of the issues I'm happy to address? It's a lawyer's dream to try and argue a circuit split, but I think in this one it was a little too easy. Okay. Thank you. Thank you, Your Honors. Mr. Caffey, you can have a minute for rebuttal or whatever you have left. What did he have left? He had four minutes, but, you know, you don't need to use it all. I will not. But I will point out that, and this has been a consistent theme for us throughout this case, the original complaint plainly pleads the route restriction theory. So I don't understand how lawyers of that capability can say it doesn't. It says in plain, you know, black and white, defendant had a uniform policy and practice of restricting all drivers during their alleged meal periods to remain within one mile or half mile radius of their designated routes. Thus, defendants did not allow planner for an impugnative class member duty-free meal periods as required by the California Labor Code and the applicable Industrial Welfare Commission wage order. It was right there for them. Okay? The Zeta records were also right there for them in the original complaint, footnote five. We brought it up. Everyone knew about the Zeta records through Della Cueva. It had all been discovered. Everyone knew they could go and get the information if they wanted to. This is all very interesting, but when did we start putting footnotes in complaints? I guess when I got involved. I'm not sure. I mean, I've never seen that. Whatever happened to a short and plain statement? It's all gone? Trumbo. What's the Supreme Court case that said we now have to explain our theories? Twombly. Twombly. Twombly. Now we need footnotes in the complaint. Well, one fear that you're going to get a district judge that says it's not concise enough. It's not, I know, no longer rule eight, right? But the point being, it was there. And if you go back and read Seidman, I mean, if he doesn't have an obligation to go dig around his records, then they shouldn't have removed the case the first time. It was a premature removal. But if they're going to do it, they should do it the right way. They had the records. They had the allegation. They should have done it the right way. And that's what Seidman stands for. And we're getting away from that because it just lets them keep going back and back and back. And I'll submit to you finally that. You'd prefer to stay in the state court, of course. Well, of course. Why, the judge asked. Why? Yeah. Well, I mean, there's many reasons. But I think the traditional thinking is that, first of all, the case raises particular state law questions, right? So the state court should be better suited to answer those questions than the federal court. Secondly, we don't need a unanimous jury if we get the trial. And, you know, we think we have a good panel in CCW that understands these wage and hour issues because they see them all the time instead of putting it into the federal judiciary's lap to guess whether or not a one-mile route restriction violates the California Labor Code. Unfortunately, Congress has said that if you have diverse parties and your claim is over 75,000, welcome to the federal court. Except I just submit to you that they can't keep coming back and trying to get it over 75,000. I get the diversity aspect of it, but the amount of controversy is not met. And the last point I'll make, and I thank you for your patience to the panel, but, look, their numbers may be plausible. Our numbers may be plausible. But all doubts are supposed to be resolved against removal. This is a straight Section 1332 removal. So did Judge Real make a factual determination? I don't think so. I mean, there's no analysis whatsoever other than to say that it's over 80. He went from 44 the first time to over 80 the second without any explanation. And unlike, you know ---- Well, it matches what they argued in their opposition, so you must accept that number. Well, why reject it the first time but accept it the second time? You know, why take their number, you know, not take their number the first time but take it the second time without explanation? There's fictions in law, but there's no fictions in numbers. You can add them up. You know, we all can sit here and crank the numbers. If you crank the numbers and you do it the right way, it does not come to 75,000. Thank you, Counsel. Thank you. Thank you, Counsel. We appreciate your arguments this morning. I think that's our last case. We're done for the day, and we'll start tomorrow. See you all tomorrow.
judges: Pregerson, Paez, Nguyen